[No. 7672.   *En Banc.*   June 7, 1909.]

## H. G. MANVELL, *Appellant*, v. W. H. WEAVER, *Respondent.*[1]

CONTRACTS—CONSTRUCTION—LAWS AFFECTING CONTRACT.   A contract requiring leased premises to be completely equipped for a restaurant kitchen is presumed to be made in contemplation of Laws 1905, p. 77, prescribing certain sanitary arrangements for such premises.

EVIDENCE—TO EXPLAIN WRITING—CONTRACTS—AMBIGUITY.   A contract requiring the vendor of a restaurant business to deliver a lease of premises then in course of construction, which provided that the kitchen partition, dumb-waiter shafts, together with all necessary plumbing, piping, and wiring shall be done by the landlord without expense to the vendee, is ambiguous as to the cost of ventilating shafts required by law for kitchens, and oral evidence is admissible to show that the actual agreement contemplated a full equipment as a kitchen including the required ventilating system.

SAME—CONTEMPORANEOUS ORAL AGREEMENT—DELIVERY OF LEASE. Under an agreement for the delivery of a three-year lease of premises then in course of construction, which lease did not specify when the term was to commence, evidence is admissible to show a contemporaneous oral agreement whereby the lease was not to go into effect and the rent was not to commence until the building was completed.

Appeal from a judgment of the superior court for King county, Tallman, J., entered July 1, 1908, upon the verdict

[1]Reported in 102 Pac. 36.

of a jury, rendered in favor of the defendant, by direction of the court, after a trial on the merits in an action to recover purchase money paid. Reversed.

*Sauter & Sheldon* and *Keenan & Hardinger*, for appellant.

*Aust & Terhune*, for respondent.

CROW, J.—On February 25, 1907, the defendant, W. H. Weaver, owner of a restaurant in the city of Seattle, agreed to sell the same to the plaintiff, H. G. Manvell. It was located in the Arcade building, to which building the owner, the Moore Investment Company, was then constructing an annex. A written memorandum of sale was entered into between plaintiff and defendant, the material portions of which read as follows:

"Seattle, Wash., Feb. 25, 1907.

"This is to certify that Latsch & Barth, acting as agents for both buyer and seller, have this day received from H. G. Manvell the sum of two hundred dollars ($200) as deposit to apply on purchase price of that certain restaurant situated in the basement of the Arcade Building, Seattle, Wash.

"The purchase price of said place to be two thousand dollars cash, payable as follows:

"This two hundred dollars ($200) cash in hand and balance of eighteen hundred dollars ($1800) on or before March 2d, 1907. . . .

"It is further understood that Mr. Weaver is to deliver a lease or cause same to be delivered upon that certain vacant store room now being completed in the Arcade Annex, together with the basement thereto, which shall be for a period of not less than three (3) years and at a monthly rental of three hundred dollars ($300).

"Said location to be substantially as follows: The main store room facing First Ave. and directly opposite present Arcade Lunch, and on street level to be 20x100 ft., also a basement under rear of said store room and size approximately 50x60 ft.

"It is further understood that kitchen partition and provision for dumb-waiter shafts, together with all necessary plumbing, sewer connections, piping and wiring shall be done

by the landlord without any expense to said H. G. Manvell whatever.

"It is further understood that if said Mr. Weaver is unable to deliver or cause to be delivered the lease as specified above. this contract shall be null and void and all deposit money returned to said H. G. Manvell, without any expense to him whatever. . . ."

It is conceded that possession was not delivered to plaintiff until March 4, 1907, at which time he paid $1,800, the remainder of the purchase price, and the Moore Investment Company executed and delivered to him a lease of the storeroom and basement, which made no reference to the equipment and fixtures to be installed therein. As the annex approached completion, the Moore Investment Company refused to construct, at its expense, any air shafts or ventilating tubes in compliance with chapter 48, Laws 1905, p. 77, so that the basement might be legally used at a kitchen. Thereupon the plaintiff, who contended that the defendant had violated his contract of sale in failing to procure a lease which carried such equipment with it, elected to cancel the contract and lease, and commenced this action to recover the purchase price paid by him, and other damages. In his complaint he pleaded the written contract of sale, and after making other allegations which need not be stated, further alleged:

"That thereafter, and on or about March 4, 1907, before the said building, including the premises, containing said room and basement, leased as aforesaid, was completed, and before the said room and basement had been equipped and constructed for use as a restaurant and kitchen, said defendant persuaded and induced plaintiff to go into possession of the said restaurant which he was then operating in the Arcade Building at the same time assuring plaintiff that the said room and basement as aforesaid would be immediately finished and completed according to the terms of his contract of sale, and relying upon the promises and representations of said defendant that the said room and basement thereunder would be thus finished and completed immediately, he consented to go into possession of said restaurant. That at the

same time and place, and as a further reason for plaintiff going into possession of said restaurant as aforesaid, said defendant caused to be made by the Moore Investment Company, the owner of said premises, a lease, a copy of which is hereto annexed and marked 'Exhibit B' and made a part of this complaint. That at the time of the execution and delivery of said lease, the said building, including the said room and basement described in said lease as aforesaid, were in the course of construction; but at that time the said room and basement thereunder were not equipped and provided with dumb-waiter shafts from the basement to the dining hall above, nor with the plumbing, sewer connections, piping, nor with any means by which the said kitchen could be ventilated as provided by law. That upon the express statement, promise and agreement of said defendant that the said room and basement would be equipped as aforesaid, and that the same would be done at once, plaintiff accepted the said lease with the agreement that said lease would not go into full force and effect until the said room and basement thereunder were equipped and finished as aforesaid, and that from the date of such equipment the rent therefor was to begin to accrue; and relying upon the said promises and representations as aforesaid, said defendant knowing that plaintiff so relied upon and believed the said promises and representations, he, the said plaintiff, paid to said defendant the further sum of eighteen hundred dollars ($1800). . . .

"Plaintiff further alleges that at the time defendant persuaded and induced him to go into possession of said restaurant and to accept the said lease from the Moore Investment Company, and to pay defendant the said sum of eighteen hundred dollars ($1800) the latter well knew that the said Moore Investment Company never intended to finish, complete and equip the said room and basement thereunder so that the same could be used and occupied for a first-class lunch room, restaurant and kitchen in connection therewith."

The defendant, in substance, alleged, that the negotiations between the plaintiff and himself pertaining to the sale ended on February 25, 1907; that the plaintiff paid him the $1,800 remaining due, and entered into a lease directly with the Moore Investment Company; that it was the express wish of the plaintiff that he be permitted to deal with the Moore

Investment Company in obtaining the lease, and that afterwards by the mutual agreement of plaintiff and the Moore Investment Company the lease was surrendered.

On a jury trial, the plaintiff offered evidence tending to show, (1) that the written memorandum of agreement above set forth did not fully state all the terms of the contract of sale, but that the defendant had agreed that the basement in the annex when leased and completed should, without expense to the plaintiff, be properly ventilated for legal use as a kitchen; (2) that the city authorities would not permit the plaintiff to use the kitchen for want of proper ventilation; (3) that on March 4, 1907, when the plaintiff made full payment of the purchase price, a new and independent agreement was orally entered into between him and the defendant by which it was stipulated that if the plaintiff then made full payment of the purchase money due on the contract of sale, the lease from the Moore Investment Company should not take effect or become binding upon the plaintiff until the leased room and basement then in course of construction were properly equipped and ventilated without expense to the plaintiff. On objections interposed by the defendant, all of this evidence was excluded. At the close of plaintiff's case, the trial court sustained a challenge to the sufficiency of his evidence, directed a verdict in favor of defendant, and entered judgment thereon. The plaintiff has appealed.

Appellant's assignments of error are based upon the action of the trial court in rejecting the evidence so offered. Prejudicial error was committed in refusing such evidence. The theory upon which the trial judge proceeded is shown by the following language, used by him in sustaining the respondent's challenge and motion for a directed verdict:

"Gentlemen of the jury, you will select one of your number as foreman. You have been called here to assist in the administration of justice, and I always think it is fair to you to say why cases are taken away from the jury. As a matter of law the court is compelled to prohibit any testimony in this case, by reason of the fact that there was a written agree-

ment in this case, and the law says you cannot vary the terms of a written agreement by oral testimony. That is the reason I am doing this. I think it is only fair that you should know why the court does this."

It was the evident intention of the parties that the appellant should temporarily conduct the restaurant in its old location and thereafter in the new building, when completed, and that the respondent was to procure appellant a lease for three years on the new room and basement. It is also apparent that the parties were contracting for a lease that would permit the leasehold to be used for a restaurant business. Sufficient is stated in the written agreement to show that a complete equipment of the leased premises for that purpose was contemplated. Some portion of the premises would have to be used as a kitchen, but before any such use of it would be made, a complete compliance with the requirements of chapter 48, Laws 1905, page 77, was a necessary condition precedent, and the parties must be presumed to have had this statute in contemplation when making their contract.

The vital question to be determined in this action was whether the lessor or lessee was to sustain the expense of installing the necessary equipment for ventilating purposes. Was the burden to rest upon the appellant, or did the respondent agree to procure a lease relieving him from any such burden? When the evident purpose of the contract and its language are considered to ascertain the person upon whom the expense of installing the ventilating system should rest, it is found to be somewhat ambiguous and doubtful in its terms. The statute requiring such ventilation had to be observed, and the expense of installing the same would necessarily rest upon the one party or the other. There is not one word in the contract imposing any such burden on the appellant. It does provide for certain fixtures and improvements, but the only ones mentioned were to be installed without expense to him. Under these circumstances and conditions the appellant was entitled to show by proper evidence that the

actual agreement between himself and the respondent con-
templated a full equipment, including the ventilating system
to be installed at the expense of the Moore Investment Com-
pany. The written agreement is sufficiently ambiguous to
call for the evidence offered; such evidence being admissible,
not to add to or vary the terms of the written agreement or
to change its purpose, scope, or meaning, but consistently
with its terms, to explain its uncertainties, and disclose the
exact agreement of the parties.

In *Lowry v. Adams*, 22 Vt. 160, 165, the supreme court of
Vermont said:

"For the purpose of ascertaining the intent of the parties
in entering into any contract, courts will look at the situa-
tion of the parties making it, the subject-matter of the con-
tract, the motives of the parties in entering into it, and the
object to be attained by it; and, even in cases where the con-
tract is reduced to writing, will allow all these circumstances
to be shown by *parol* evidence, if the intent of the parties,
upon the face of the contract, is doubtful, or the language
used by them will admit of more than one interpretation. See
*French v. Carhart*, 1 Comst. 96, and observations of Jewett,
Ch. J., p. 102; Chit. on Cont. 74, and notes. When, from
the contract itself and all the surrounding circumstances, the
true object and intent of the parties has been ascertained,
courts will enforce the contract according to that intent, un-
less there be found in the way some stubborn, inflexible rule
of law, absolutely requiring a different determination."

See, also, *Gould v. Boston Excelsior Co.*, 91 Me. 214, 39 Atl.
554, 64 Am. St. 221:

"Where the written evidence of a contract or a term there-
of is ambiguous or uncertain, oral or extrinsic evidence is ad-
missible to explain the ambiguity or clear up the uncertainty,
in order that the real intention of the parties may be made
to appear. For this purpose evidence of the facts and cir-
cumstances leading up to and attending the execution of the
writing is admissible, and acts of the parties tending to show
the construction which they themselves have placed upon it
may also be shown." 11 Current Law, 1371.

The written contract provided that the second payment of $1,800 should be made on March 2, 1907. It was actually made on March 4. The appellant pleaded a subsequent oral agreement, the effect of which was that the lease, although executed and delivered, should not become a binding contract upon appellant until the fixtures, equipment, and ventilating system were fully installed and the room and basement were thus rendered fit for use as a restaurant and kitchen. Appellant should have been permitted to show such subsequent oral agreement if he could do so. The lease itself, which is in the record, tends to sustain his contention. It simply provides for a term of three years without fixing the exact date of its commencement or termination, evidently contemplating that it should commence when the building was completed, properly equipped, and ready for use. In other words, the term did not commence to run at once, but was to begin at some future time to be ascertained in some manner not stated in the lease. We see nothing in the lease or in the previous written memorandum of agreement inconsistent with the existence of the subsequent oral contract which the appellant pleaded, and should have been permitted to prove. *Reiner v. Crawford*, 23 Wash. 669, 63 Pac. 516, 83 Am. St. 848.

"Parol evidence is admissible to show that a contract of sale was delivered, not as a binding contract at time of delivery, but to become binding upon the performance of some condition or the happening of some contingency and that it has never become obligatory by reason of the fact that the condition has not been performed or that the contingency has not occurred." 9 Ency. Evidence, 494, and cases cited. See, also, *Cavanagh v. Iowa Beer Co.*, 136 Iowa 236, 113 N. W. 856.

The judgment is reversed and the cause remanded for a new trial.

MOUNT, DUNBAR, FULLERTON, PARKER, GOSE, MORRIS, and CHADWICK, JJ., concur.