[No. 8971.  Department Two.  December 2, 1910.]

H. G. MANVELL, *Respondent*, v. W. H. WEAVER, *Appellant*.[1]

APPEAL—DECISION—LAW OF CASE.  Upon a retrial, the decision on a former appeal becomes the law of the case, and is conclusive.

APPEAL—REVIEW—HARMLESS ERROR—VERDICT.  Where the jury returns the only verdict that could have been rendered under the evidence, intermediate errors as to the form of the action or error in instructions are harmless.

SAME—INSTRUCTIONS.  Errors in submitting instructions as to the measure of damages on a certain item is harmless where it appears from the verdict of the jury that such item did not figure in the verdict.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 19, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract.  Affirmed.

*Aust & Terhune*, for appellant.

*M. E. Sheldon* and *Keenan & Hardinger*, for respondent.

DUNBAR, J.—For some time prior to the 25th day of February, 1907, appellant was the owner of and conducting a restaurant in the basement of the Arcade building, in the city of Seattle.  This restaurant fronted upon Arcade court. Opposite this restaurant, and across the court, was then under course of construction a building known as the Arcade Annex. Both of these buildings were controlled by the Moore Invest-

[1]Reported in 111 Pac. 890.

ment Company. On said day, appellant and respondent entered into a written agreement, as follows:

"Seattle, Wash., Feb. 25, 1907.

"This is to certify that Latsch & Barth, acting as agents for both buyer and seller, have this day received from H. G. Manvell, the sum of two hundred dollars ($200) as deposit to apply on purchase price of that certain restaurant situated in the basement of the Arcade building, Seattle, Wash.

"The purchase price of said place to be two thousand dollars cash, payable as follows:

"This two hundred dollars ($200) cash in hand and balance of eighteen hundred dollars ($1,800) on or before March 2nd, 1907, at which time the owner, Mr. Weaver, shall furnish H. G. Manvell with a clear bill of sale and an affidavit that all furniture, fixtures, dishes, kitchen equipment, stock and everything contained in said restaurant shall be absolutely free of all incumbrances.

"It is further understood that Mr. Weaver is to deliver a lease or cause same to be delivered upon that certain vacant store room now being completed in the Arcade Annex, together with the basement thereto, which shall be for a period of not less than three (3) years, and at a monthly rental of three hundred dollars ($300).

"Said location to be substantially as follows: The main store room facing First Ave. and directly opposite present Arcade Lunch, and on street level to be 20x100 ft., also a basement under rear of said store room and size approximately 50x60 ft.

"It is further understood that kitchen partition and provision for dumb-waiter shafts, together with all necessary plumbing, sewer connections, piping and wiring, shall be done by the landlord without any expense to said H. G. Manvell whatever.

"It is further understood that if said Mr. Weaver is unable to deliver or cause to be delivered the lease as specified above this contract shall be null and void and all deposit money returned to said H. G. Manvell, without any expense to him whatever.

"It is agreed by Mrs. M. Manvell, representing H. G. Manvell, that she agrees to complete purchase in the manner and upon the terms herein specified and that in case of her failure

to do so, the said sum of money hereby receipted for shall be forfeited as liquidated damages.

"It is further agreed that in event of failure to convey good and sufficient bill of sale on said restaurant on or before March 2nd, the said deposit of two hundred dollars ($200) shall be refunded        Latsch & Barth, By L. M. Latsch.

"I hereby agree to all the provisions of the above contract.                H. G. Manvell, By Mrs. M. Manvell.

                                    "W. H. Weaver.

"Dated Seattle, Washington, Feb. 25, 1907."

On the 4th day of May following, the parties met, respondent paid to appellant the remaining $1,800, received a bill of sale of the restaurant fixtures, and accepted from the Moore Investment Company a lease in accordance with the terms of the agreement between appellant and respondent; but the beginning of the respondent's tenancy under appellant's lease was left blank therein, to be later filled in on completion of the building. Deeming that the provisions of the agreement had not been complied with in relation to some of its provisions, especially the provision with relation to the supplying of dumb waiter shafts and necessary plumbing and sewage connections, piping, and wiring, this action was brought by the respondent against the appellant, alleging violation of the provision of the contract.

The defendant, answering that portion of the complaint, admitted the execution of the contract set out, but denied responsibility for the furnishing of the plumbing, etc., and alleged, in substance, that the transactions between the appellant and respondent were ended when the respondent paid the balance due on the contract price and received his lease from the Moore Investment Company. While many allegations and denials are made in the complaint and answer, this is really the material question in the case. Plaintiff alleges that, upon the failure of the defendant to comply with the conditions of the contract, he tendered and offered to return all of said personal property by him received from the defendant, and also to deliver to defendant complete possession of the

said restaurant; and duly demanded of the defendant that he pay to him the said sum of $2,000, which the defendant neglected and refused, and still neglects and refuses, to do. This offer to rescind is admitted by the defendant in his answer, and he affirmatively alleges that he refused the plaintiff's offer in that respect. The plaintiff set forth several items for which he demanded compensation in the way of damages, and the expenditure of certain moneys amounting to $400, and alleged, that the value of the occupancy under the lease would have been $7,500; and that the true and proportionate consideration, paid by the defendant to plaintiff for said restaurant and lease and the assignment thereof, was $1,615, the expressed valuation being $2,000 and it being admitted that the plaintiff obtained $385 for the personal property belonging to the restaurant, leaving a balance of $1,115 on that item. Upon the trial of the cause, certain testimony was offered tending to explain or construe the language of the contract. This testimony was rejected, and the trial resulted in a nonsuit against respondent; whereupon he prosecuted an appeal to this court. The decision is reported in 53 Wash. 408, 102 Pac. 36, where is set forth an extended statement of the case, to which we refer, and which precludes the necessity of a further statement in this opinion.

It seems to us that that opinion settles many of the questions that are discussed on this appeal. There this contract was construed, as was also the complaint in this case. It was held that the written agreement was sufficiently ambiguous to call for the evidence offered, for the purpose of explaining its uncertainties and disclosing the exact agreement of the parties; and the case was for that reason sent back. Upon a retrial, a verdict was rendered in favor of the respondent for the sum of $1,615 which represented the balance of the purchase price paid for the old restaurant. As to the character of this action, it was said in the former opinion:

"Thereupon the plaintiff, who contended that the defendant had violated his contract of sale in failing to procure a lease

which carried such equipment with it, elected to cancel the
contract and lease, and commenced this action to recover the
purchase price paid by him, and other damages."

It was also said in that case:

"The vital question to be determined in this action was
whether the lessor or lessee was to sustain the expense of in-
stalling the necessary equipment for ventilating purposes.
Was the burden to rest upon the appellant, or did the respond-
ent agree to procure a lease releasing him from any such
burden?"

Indeed, the appellant admits, during the course of the trial
and by the defense offered, that this was the vital question in
the case. This being true, the only question involved here
is, is the verdict sustained by the evidence. From a perusal
of the testimony, we are satisfied that it is fully sustained.
In fact, we hardly see how the jury could have come to any
other conclusion than the one reached, under the testimony
offered. Therefore, the questions that are discussed in rela-
tion to the form of the action, the alleged errors of the court
in instructions, etc., are not material; for when it is apparent
that the jury have returned the only verdict which could have
properly been determined in the case, intermediate errors be-
come immaterial. In addition to this, all the alleged errors
of the court in its instructions in relation to the value
of the leasehold interest which was sued for, viz., $7,500, be-
come immaterial, for the reason that it is plain from the ver-
dict that no value whatever was considered by the jury, and
that the respondent was simply awarded the purchase price,
viz., the difference between $2,000 which he had paid and the
$385 which he confessed to have received from the personal
property he had disposed of. The other item claimed—the
$400—was taken from the consideration of the jury by the
instruction of the court. Hence, the instructions of the court
in relation to the measure of damages, even if they had been
erroneous, would not be material.

Finding no errors whatever in the trial of the cause, the judgment will be affirmed.

RUDKIN, C. J., CHADWICK, MORRIS, and CROW, JJ., concur.