[No. 17734.   Department Two.   March 8, 1923.]

CURTIS STUDIO, *Respondent*, v. METROPOLITAN BUILDING COMPANY, *Appellant.*[1]

LANDLORD AND TENANT (22)—TERMS FOR YEARS—DURATION—CONSTRUCTION OF AGREEMENT FOR LEASE. An agreement for a lease for a photographer's studio, construed most strongly against the grantor, and to give effect to the intention of the parties, was for a term of five years from and after the payment of percentages for alteration expenses, where it provided for payment as rent of ten per cent of the gross income of the business, of which all over $150 per month was to repay the landlord for alteration expenses until $3,000 had been repaid thereon, and the lessee thereafter to be excused from paying "any percentage in excess of $150 per month for a period of five years, in the event this lease shall continue in force for that period"; the last clause manifestly having reference to a provision for the cancellation in the event of the removal of the building.

STIPULATIONS (2, 3)—CONSTRUCTION—MATTERS CONCLUDED. Where parties to a lease stiplated that the lessee should remain in undisturbed possession of the premises described in the pleadings in the action, until the full expiration of the term provided in the lease, they are governed by the written language of the lease and estopped to assert any oral agreement as to the term and duration of the lease.

Appeal from a judgment of the superior court for King county, Smith, J., entered October 28, 1922, in favor of the plaintiff, upon the pleadings, in an action for an injunction.   Affirmed.

*Kerr, McCord & Ivey* and *W. Z. Kerr,* for appellant.
*John G. Barnes,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, began this action in the court below by filing its complaint, in which, among other things, it alleged that, from January 17, 1892, to June 24, 1919, Edward S. Curtis and Clara J. Curtis were husband and wife, residents of Seattle, Washington, and as such constituted a marital

[1] Reported in 213 Pac. 455.

community under our laws; that the community so composed acquired, owned, and operated a photograph studio in the city of Seattle, known as the Curtis Studio, until June 24, 1919; that, on January 27, 1917, a written agreement was entered into between the appellant and Edward S. Curtis acting on behalf of the community, as follows:

"Agreement between Metropolitan Building Company, and E. S. Curtis, witnesseth:

"That the said Metropolitan Building Company, does hereby agree to rent to said E. S. Curtis a certain room in the Exhibition Building on the University Tract in the city of Seattle, King county, Washington, plans for which are attached hereto and made a part of this agreement:

"That the said E. S. Curtis shall, at his own expense equip and operate said premises as a photographic studio, and shall pay as rent therefor ten (10%) per cent of the gross sales received from the operation of said studio, said amount to be paid in cash on the tenth day of each and every month out of the gross sales for the preceding month, subject to the provisions hereinafter mentioned. The said E. S. Curtis agrees that the said percentage shall not be less than $150 per month in any month.

"That in consideration of the fact that the Metropolitan Building Company is making expenditures in excess of $3,700 in order to take care of the special needs of the studio and of a mercantile tenant, it is agreed between the parties that such percentages as are received in excess of $150 per month shall be applied on liquidating the cost of said special expenditures. That whenever the percentages that have been paid the Metropolitan Building Company in excess of $150 per month amount in the aggregate to $3,000, it is agreed that said E. S. Curtis shall not be required thereafter to pay any percentages in excess of $150 for a period of five (5) years, in the event this lease shall continue in force for that period.

"It is the intention of the parties that the rental under the percentages shall average $150 per month

during the period of this lease after liquidating $3,000 of the special expenditures mentioned above.

"It is understood and agreed that if the Metropolitan Building Company decides to move the Exhibition Building, said company will give the said E. S. Curtis as much notice as possible, in no case less than three months' written notice to that effect. After giving such notice no rent shall be charged lessee. In the event the Metropolitan Building Company decides to remove said Exhibition Building, it will use its best endeavors to provide a satisfactory studio upon the University Tract for the said E. S. Curtis.

"This provision for termination and notice shall not affect any other covenants or notice provided herein but the rights of the parties as to other covenants or notices shall remain the same as if this provision was not a made a part of this agreement.

"Dated at Seattle, Washington, this 27th day of January, A. D. 1917.

"Metropolitan Building Company,
"By F. J. Douglas, Secretary.
"E. S. Curtis.''

It is further alleged that, on April 15, 1917, the community, acting upon the terms and conditions set forth in the written instrument, moved the said Curtis studio from its former location in the Downs Block in Seattle to the premises described in the written agreement, at an expense to the community exceeding $2,500, and that the Curtis Studio has ever since been located at, and conducted its business in, said premises; that, on or about June 9, 1919, the terms of the written agreement were so modified that instead of paying monthly ten per cent of the gross sales, the special expenditures and the rental up to January 1, 1920, were liquidated, promissory notes were given for the amounts, the last of which was payable on the 10th day of January, 1920, which notes were accepted by the appellant, and were duly paid.

It is alleged that, on June 24, 1919, a decree of divorce was duly entered in the superior court for King county dissolving the bonds of matrimony between Edward S. Curtis and Clara J. Curtis, and in and by that decree the leasehold interest claimed to have been created by the written instrument and the Curtis Studio were set over and awarded to Clara J. Curtis as her sole and separate property, which decree was in all things affirmed on appeal to this court, and pursuant thereto, Clara J. Curtis took possession of the Curtis Studio and of the premises occupied by it; that, on April 29, 1920, the appellant served upon Clara J. Curtis notice to the effect that the tenancy under which she held possession of the premises described in the written agreement was thereby terminated and she was required to remove from such premises on or before the first day of May, 1920; that thereafter, in June, 1920, the appellant began an action in unlawful detainer in the superior court of the state of Washington for King county against Clara J. Curtis, by which it sought to oust her from the possession of the premises, and recover double damages for unlawful detainer, which action was predicated upon the written instrument heretofore quoted, and the prayer of the complaint was that the said instrument be decreed to be cancelled and of no effect as a lease, or an agreement for a lease; that Clara J. Curtis filed her answer in said proceedings, and therein incorporated an affirmative defense and counterclaim in which she prayed:

"That on the counterclaim of this defendant it be adjudged and decreed that the lease hereinbefore described herein is the sole property of this defendant, and is a valid and existing lease for the full term therein granted, subject only to termination for failure to pay rent as therein provided in the sum of $150 per

month during said term; and subject also to the exercise of the reserved rights to terminate the same for the reason and in the manner therein provided."

It is further alleged that the appellant, plaintiff in the unlawful detainer proceedings, made no reply to the affirmative defense and counterclaim there set up, but after some delay requested Clara J. Curtis to consent to a dismissal of the proceedings without prejudice. This she refused to do, and, after extensive negotiations, a stipulation in writing was entered into between the parties to that action, as follows:

"It is hereby stipulated and agreed by and between the plaintiff corporation, the Metropolitan Building Company, and the defendant Clara J. Curtis, by the respective attorneys of said parties, that in consideration of the withdrawel by said defendant Clara J. Curtis of her counterclaim and cross-complaint in this action, and her consent to the dismissal of this action by the plaintiff, with prejudice, which the said Clara J. Curtis hereby stipulates and agrees to, that the said Clara J. Curtis shall be permitted to remain in the undisturbed possession of the premises described in the pleadings in this action, under the terms and conditions set forth in the lease set forth by copy in the pleadings in this action, until the full expiration of the term provided for in said lease.

"Dated at Seattle, Washington, this 10th day of November, 1920.

"Metropolitan Building Company,
"By Kerr & McCord, its attorneys.
"Clara J. Curtis,
"By John G. Barnes, her attorney."

It is further alleged that the stipulation quoted was filed, the unlawful detainer action dismissed in accordance with the provisions of the stipulation, and the plaintiff therein authorized to withdraw the rent which had been tendered into court, which it did.

It is then alleged that, on May 5, 1920, Clara J. Cur-

tis duly assigned and set over to the respondent the property and business of the Curtis Studio, and thereafter, on November 12, 1920, transferred and set over to respondent all of her right, title and interest in and to the lease and leasehold in controversy, and all of her rights under and by virtue of the stipulation above quoted, since which time respondent has paid the monthly rental for said premises to the appellant, who has received and accepted the same. It is then alleged that, in violation of the express terms and agreements of the stipulation, appellant thereafter, on April 8, 1922, served notice to the effect that the lease of the premises would expire on May 1, 1922, and requiring that said premises be vacated and possession thereof be delivered up on or before that date. Then follow certain allegations with reference to appellant's intent and purpose to proceed immediately after May 1, 1922, to oust respondent from the premises, and allegations tending to show that respondent would suffer great and irreparable damage and injury thereby, for which it would have no adequate legal remedy. The prayer of the complaint is for an injunction *pendente lite,* for a permanent injunction after trial on the merits, restraining appellant from disturbing respondent's possession prior to the 10th day of January, 1925, and for general relief. To this complaint appellant, as defendant, answered, admitting all of the material allegations of the complaint, and by way of affirmative defense alleging that, on January 27, 1917, at the time of the negotiations for and the execution of the written contract, it was orally agreed that the term for which the premises were let should be five years from the date of the completion of the building, which was May 1, 1917, and therefore that the lease expired on May 1, 1922.

A motion was duly made to strike these affirmative defenses as sham, frivolous and irrelevant, and respondent moved for judgment on the pleadings. The motion to strike was granted, the defendant was given leave to amend its answer, but declined to do so, and joined in the motion for judgment on the pleadings; whereupon the court entered a decree awarding respondent the relief prayed for, and from that decree, this appeal is prosecuted.

Appellant assigns as error the striking of the affirmative defenses; the granting of plaintiff's motion for judgment on the pleadings; the denial of its like motion, and the entry of the decree; and on oral argument here, expressly waives any objection to the form of the action, and to respondent's right to raise the question in the manner in which it is now raised; also admitting that the consideration paid by respondent went to the whole of the term and was sufficient part performance to render the lack of acknowledgment upon the written instrument immaterial, under the rule announced in *Matzger v. Arcade Building & Realty Co.*, 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A 288. So, by the agreement of the parties, there is submitted to us the simple question of the effect of the written instrument and of the stipulation quoted, and whether the parol agreement, pleaded by the affirmative answer, can now be considered.

It is argued that the written agreement is incomplete in that, while it establishes a definite rent, it does not grant a definite term, and therefore a parol agreement as to the term may be shown. The language upon this point is:

"That whenever the percentages that have been paid the Metropolitan Building Company in excess of $150 per month amount in the aggregate to $3,000, it is agreed that the said E. S. Curtis shall not be required

thereafter to pay any percentages in excess of $150 per month for a period of five (5) years, in the event this lease shall continue in force for that period."

This language must be given a construction which will carry into effect the intention of the parties, create a valid and enforceable contract, if that be possible, and in case of doubt, under the familiar rule, must be construed against the grantor. It must also be construed in the light of the whole instrument, and, when so construed, it seems reasonably plain that the parties were uncertain as to the time required for the lessee's business to earn $3,000 in percentages; that such percentages were a part of the consideration, and that payment thereof should earn a five-year term at a rental of $150 per month only; that such five-year term should begin when the percentages were fully earned and paid. Moreover, the last clause quoted manifestly has reference to the provision of the written contract following, providing for the cancellation in the event of the removal of the building, and when read in connection with that provision, the words "in the event this lease shall continue in force for that period" clearly mean that a term of five years from and after the payment of $3,000 in percentages is thereby granted, subject to termination only in the manner and for the causes thereinafter set forth.

But if we are mistaken in this, the parties, by their written stipulation, have clearly so construed the instrument. That stipulation provides: "that the said Clara J. Curtis shall be permitted to remain in the undisturbed possession of the premises described in the pleadings in this action under the terms and conditions set forth in the lease set forth by copy in the pleadings in this action, until the full expiration of the term provided for in said lease." This means, and can only mean, that the parties are to be governed by the

written language in the lease. It negatives the idea of there being any oral agreement affecting the subject-matter, and this stipulation having been acted upon, the appellant is now estopped from asserting the contrary. In the light of the stipulation, which in plain terms provides that the rights of the parties are to be determined by the terms of the written instrument, the case of *Manvell v. Weaver*, 53 Wash. 408, 102 Pac. 36, upon which appellant relies, has no application, and there was no error in striking the affirmative answers. In the light of the same agreement, the judgment on the pleadings was the only judgment which could be entered.

Judgment affirmed.

MAIN, C. J., PEMBERTON, and PARKER, JJ., concur.