Mr Chief Justice Marshall
 

 delivered the opinion óf the Court.
 

 ' The appellees claim title to a lot of ground in the city of New Orleans, as purchasers from the heirs of Catharine Gonzales, the widow of Thomas Beltran, alias Bertrand, who had been in possession of the lot for several years, by permission of the Spanish g'overnment. This incomplete title was regularly confirmed under the laws of the United States, and a patent was issued for the premises to Catharine Gonzales, on the 17th of February 1821.
 

 The city of New Orleans, claiming this lot as being part of a quay, dedicated to the use of the city in the original plan of
 
 *234
 
 the. town, and therefore, not grantable by the king, has enlarged the'Levee so as to embrace it. The appellees brought their petitory , action in the district court of the state of Louisiana, praying to be confirmed in their rights to the said lot of ground; and that the corporation might be. enjoined from dis- ' turbing them in the exercise thereof.
 

 . The district court pronounced its judgment in favour.of the petitioners, which, on appeal, was affirmed by the supreme court of the state. This judgment of affirmance has been removed into this court, under the twenty-fifth section of the judicial act.
 

 The merits of the controversy cannot be revised in this tribunal. We can inquire only whether the record shows that the constitution, or a treaty, or a law of the United States, has been violated by the. decision-of the state court. The appel-lees move to dismiss the writ of error, because no such violation appears.
 

 In support of His motion, the.counsel has, we think, in his argument, prescribed too .narrow a principle for the action of this court. ' He says, very truly, that the twenty-fifth section of the. judicial act is limited by the constitution, and must be construed so as to be confined within.those limits; but he adds, that a.case can arise under the constitution or a treaty, only when the right is-created by the. constitution or by a treaty. We think differently. This construction 1 would deféat.the obvious purpose of t.he constitution, as well'as of the act of congress. The language of both ’ instruments extends the. jurisdiction of this court to rights protected by the constitution, treaties, or laws of the United States, from whatever source those rights may'spring.
 

 To sustain Che jurisdiction of the court in the case now under consideration, it.must be shown that.the title set up by the city of New Orleans, is protected by the treaty ceding Louisiana to the United States, or by some act of congress applicable to that title. The counsel in support of the motion contends, and w.e think correctly, that the-treaty does not embrace the case.
 

 The first, article makes the cession, and the second describes its extent, as comprehending every right vested in France, The third is expressed in these words,
 
 “
 
 the inhabitants of the
 
 *235
 
 ceded territory shall be incorporated in-the union, of the United States, and admitted as soon as possible, according to the prin- . ciples of the federal constitution, to the enjoyment of all the rights, advantages and immunities of citizens of the United States ; and in the mean time théy shall be maintained and protected in the free enjoyment of their liberty, property, and the religion whidh they profess.” - No other article of the treaty is supposed to contain any stipulation- for the rights of individuals. This article obviously contemplates two objects. One, that Louisiana shall be. admitted into the union as soon as possible, upon an equal footing with the other states; and the other, that, till such admission, the inhabitants of the ceded territory shall be protected in the free enjoyment of Jheir liberty, property and religion. Had any one of these rights been violated while this stipulation continued in force, the individual supposing himself to -be injured, might have brought his case into this court,.under the twenty-fifth section of the judicial apt. But this stipula'tion. ceased to operate when Louisiana, became a member of the union, and its inhabitants were “admitted to the enjoyment of all the rights, advantages and immunities of citizens of the United States.” The right to bring questions of title decided in a state court, before this tribunal, is not classed among these immunities. The inhabitants of Louisiana enjoy all the advantages of American citizens, in common with their brethren in their sister states, when their titles are decided by the tribunals of the- state.
 

 The counsel for the appellant scarcely hopes to maintain the .jurisdiction of the court under the treaty, but seems to rely on the act of congress for admitting the state of Louisiana into the union. The section of that act which is supposed to apply, is in these words, “be it enacted, &c., that the said stale shall become, and is hereby declared to be one of the United States of America, and admitted into the union on ah equal footing with the original States in all respects whatever, by the name and title of the state of Louisiana.”
 

 This simply carries into execution the third article of the treaty of cession; and cannot, as has already been observed, be construed to give appellate jurisdiction to this court over all questions of title between the citizens of Louisiana. If in any case such jurisdiction could be supposed to be given, it might
 
 *236
 
 be where an act of congress attempted to divest a.title which was vested under the pre-existing government. Therefore, the counsel opposing the motion, contends, that the jurisdiction of the court is involved in the merits of the controversy,, and cannot be separated from them. We do not think so. The controversy hi the state court was between tjvo titles: the one originating under the French, the other under the Spanish government. . It is true the successful party had obtained a' patent from the United States, acknowledging the validity of his previous incomplete title under the king of Spain. But this- patent did not profess to destroy any previous existing title; nor could it so operate, nor was it understood so to operate by the state court. It appears from the petition filed in the district court, that the patent was issued in pursuance of the act of the 11th of May 1820, entitled “an act supplementary to the several acts for the adjustment of land claims in the • state-of Louisiana.” That act confirms the titles to which it applies, “agaihst any claim on the part of the United States,” The title of the c ity of New Orleans would not be affected by this confirmation. But, independent of this act, it is a principle applicable to every grant, that it cannot affect pre-existing . titles. The United States v. Arredondo, 6 Peters'738.
 

 The judgment of the state'court appears on the record to have depended, on, and certainly ought to have depended-on the opinion entertáined by that court, of the legal rights of the parties under the crowns of France and Spain., The case involves no- principle on which this court could take jurisdiction, which would not apply to all the controversies respecting titles originating before the cession of Louisiana to the United States. It would als,o comprehend all controversies concerning titles in any of the-new states, since they are admitted into the union by laws expressed in similar language.
 

 The writ of error is dismissed, this court having no jurisdiction in the cause.
 

 • On consideration of the motion made in this cause on a prior day of the present term of this court, to wit, on Saturday the' 24th of January past, and of the arguments of counsel thereupon had, as well for the plaintiffs in error as for the'defend
 
 *237
 
 ants in error: it is now here ordered and adjudged .by this court, that this writ of error to the supreme court of the state of Louisiana, for the eastern district, be, and the same is hereby dis-. missed for the want of jurisdiction.