[No. 14992.   Department One.   March 8, 1919.]

PROGRESS AMUSEMENT COMPANY, *Appellant*, v.
JOHN S. BAKER, *Respondent*.[1]

LANDLORD AND TENANT (15-1) — LEASES AND AGREEMENTS — CON-
STRUCTION — LIABILITY OF LESSOR — BREACH OF CONTRACT TO BUILD
THEATER.  A lessor, agreeing to erect for a tenant a theater building
substantially a counterpart of another, fails in the performance,
and cannot retain a deposit as forfeit, where it appears the building
was of ordinary masonry construction, in place of slow burning
construction, and had greater seating capacity and less capacity for
approaches and rear exits, and the construction violated the building
ordinances in respect to fire-proof construction and rear exits; and
under the contract, the lessee was to save the lessor harmless from
any damage or injury to any persons occurring on the premises
from any cause whatever, thereby exposing the lessee to risks for
negligence in failing to comply with the building ordinances.

Appeal from a judgment of the superior court for
Pierce county, Easterday, J., entered July 13, 1918,
upon findings in favor of the defendant, in an action
on contract, tried to the court.  Reversed.

*Hughes, McMicken, Ramsey & Rupp* and *John P.
Garvin,* for appellant.

*W. W. Keyes* and *M. J. Gordon,* for respondent.

MITCHELL, J.—By a written contract dated January
20, 1914, signed by both parties, respondent, John S.
Baker, agreed ·he would erect upon his property in
Tacoma a moving-picture theater building for the use
and occupancy of appellant for a term of ten years.
To assure compliance with the terms of the contract
on its part, appellant deposited with respondent
$10,000, which was to be applied one-half to the pay-
ment of the last four months' rental of the first year
of the term, and the other one-half to the last four

¹Reported in 179 Pac. 81.

months' rental of the last year of the term, with the further agreement that default on the part of appellant at any time during the term would work a forfeiture of the amount of such deposit remaining at that time in the hands of the respondent. The contract provided the theater building should be substantially a counterpart of the Colonial theater building in Seattle, with certain exceptions not necessary to be mentioned here. After the contract was signed and the deposit of $10,000 made, but before the commencement of the construction of the building, appellant offered respondent $2,500 to be released from the contract. Respondent refused the offer and promptly thereafter, confirmatory of his refusal, wrote to appellant saying, "I am ready and willing to perform each and every condition of the lease and expect you to do likewise"; to which appellant replied by letter:

"You can proceed with the erection of the building and the lessee will undertake to carry out the terms and conditions of the lease on its part."

Thus, whatever may have been the mutual dispositions of accommodation shown in conferences leading up to the making of the contract and until appellant attempted to procure a cancellation of the contract, it is evident, from all that was said at the time the offer was made and the exchange of the letters immediately following, that each party then gave the other to understand a strict compliance with the terms of the contract would be expected. Respondent erected the building and tendered it to appellant. Appellant caused the building to be inspected by architects, and upon receiving their report notified respondent in writing that the building was materially deficient as

to attractiveness and desirability in a large number
of specified particulars, and that there were other de-
fects which greatly reduced the suitability of the build-
ing for the purpose for which it was leased, declined
to accept it, and demanded a return of the $10,000
deposit. Respondent refused the demand and claimed
a forfeiture of the deposit. To recover this sum and
interest, appellant instituted this action. Other facts
will appear further along in the opinion. The trial
court made findings that there were certain differences
between the two buildings, not sufficient, however, to
constitute a failure on the part of respondent to com-
ply with the contract. Upon such findings, a judg-
ment of dismissal of the action was entered, from
which this appeal is taken.

In its complaint, appellant relied on quite a number
of items as to which it alleged the Tacoma building
was materially defective as compared with the Seattle
building, all of which are noticed in its brief on ap-
peal. However, in oral argument all of them were
practically abandoned except those relating to general
construction with reference to fire protection, plaster-
ing, and lathing of the ceiling and partitions, and those
relating to the rear exits, each of which is associated
with the claim that the Tacoma building ordinance was
violated.

The trial court in effect found, and the proof satis-
factorily shows, that the ceiling in the Seattle build-
ing was constructed of heavy timbers from which,
hanging on metal straps, there are steel channels to
which are wired metal laths and the ceiling plastered
on the metal laths. This is what is termed practically
fireproof or slow-burning construction. The Tacoma
building has light ceiling joists, wood laths, and plas-
ter. This is termed ordinary masonry construction.

The partitions in the Seattle building are of slow-burning construction, while those in the Tacoma building are ordinary masonry construction. Slow-burning construction is the more expensive of the two kinds. In some other particulars, of a minor sort other than the rear exits and approaches, it appears the Seattle house was nearer fireproof than the Tacoma building.

The seating capacity of the Tacoma building is about 1,000, while that of the Seattle building is 100 to 125 less. The capacity of the front doorways in each building is about the same. The Seattle theater has two rear exits, each five feet wide with an inclined approach the same width; the Tacoma building has two rear exits each three and one-half feet wide with a wooden stairway approach four feet wide and eighteen to twenty steps high. The building in material respects was constructed in violation of the provisions of the city ordinance. At the trial, this matter was first gone into by the respondent. On cross-examination of two of appellant's witnesses, without any testimony in chief concerning the matter, it was developed that the building ordinance of Tacoma had been violated with reference to the construction of the ceiling and partitions. Then, in further cross-examination of one of those witnesses who was disinterested and who for nine years had been an architect in Tacoma, he testified as follows:

"(Q.) Stairs are the only practicable way of meeting the physical conditions on the site of the Tacoma theater? (A.) Yes, sir, but they are constructed of wood; they are also contrary to the ordinances as regards width. . . . (Q.) What columns did you refer to when you said they were contrary to the building ordinances of Tacoma? (A.) The gas pipe columns that support the marquise. (Q.) Your references now

are to the Tacoma building ordinances in effect at that time? (A.) No, in effect now. (Q.) Do you see anything about the construction of the Tacoma theater that is contrary to the ordinances then in effect? (A.) I do. (Q.) If so, in what respect? (A.) The roof construction is directly. (Q.) Directly what? (A.) Directly opposite to the ordinance; does not comply in any respect; also the wood stairway. (Q.) The present ordinances or ordinances at that time? (A.) Ordinances at that time. (Q.) What has the present ordinances on that? (A.) The same thing. It has not been changed since 1911.''

Then, in redirect examination touching the same matter, without objection on the part of respondent, the witness testified as follows:

''(Q.) I wish you would point out to the court in what particulars the Tacoma building is in violation of the building ordinance in force at that time? (A.) The building ordinance expressly states it must be Class A, B, or C construction, which are all fireproof; everything must be fireproof in it, except maybe something small like a window, something like that. Now, the roof, ceiling and roof and all that is in direct violation of that ordinance, and also the wood stairway up to the rear exit, and this stairway is not the required five feet wide that the ordinance requires.''

This testimony concerning the requirements of the city ordinance not only was not contradicted (except as to the roof which is protected against fire from the outside), but was largely corroborated later on in the trial by the testimony of the architect who constructed the Tacoma building.

The evidence shows that most of the fires in such play houses start from the operator's room or booth located in the front of the house. In this building, the operating room was constructed according to the requirements of the underwriters, thereby reducing the likelihood of fire to the minimum. Such construction,

however, would not justify failure of proper care in the observance of the city ordinance as to so-called fireproof construction in other portions of the house, and proper facilities for emptying the house in cases of emergency caused by true or sometimes false alarms of fire. In case of a fire starting in the front, patrons are driven to the rear in order to escape. Comparing the two houses for the purpose of escape, it is to be noticed the seating capacity of the Tacoma building is from twelve to fifteen per cent greater than that of the Seattle building, while the approaches and rear exits of the Tacoma theater are only seventy per cent as accommodating as those in the Seattle building. These differences are important and substantial.

The contract between the parties provides, among other things, as follows:

"Nor shall the lessor be liable for any damage or any injury to persons occurring or arising upon said premises from any cause whatever and said lessee hereby agrees to keep and save harmless the lessor from any suit or claim for damage or injury sustained upon said premises by any person from any cause whatever during the continuance hereof."

Thus it is seen that, had the building been accepted and used as a moving-picture theater and injury to a third person occurred by reason of a fire or other general accident in the building reasonably attributable, even in part, to the defects enumerated, the exposure of respondent to damages for his negligence in failing to comply with the building ordinance of the city in the construction of the house would have ultimately fallen upon the appellant because of its covenant to save respondent harmless. It cannot be said, as a matter of law, that one has complied with his contract to furnish a building, or that he may penalize another for failure to accept a building, where

it has been constructed in some essential particular in violation of positive law. To state the rule in another way, if the positive law prohibited the erection of a certain kind of a building for theater purposes, and the contract had provided for the erection of that kind of building, certainly it cannot be questioned that neither of the parties to such contract could have enforced it against the other. The evidence advises us of certain portions of the building ordinance that were not respected. They became a part of the contract between the parties as though they had been actually written in the contract. In the case of *Manvell v. Weaver*, 53 Wash. 408, 102 Pac. 36, which was a case of a written lease to premises to be prepared for a restaurant business, this court said:

"It is also apparent that the parties were contracting for a lease that would permit the leasehold to be used for a restaurant business. Sufficient is stated in the written agreement to show that a complete equipment of the leased premises for that purpose was contemplated. Some portion of the premises would have to be used as a kitchen, but before any such use of it would be made, a complete compliance with the requirements of chapter 48, Laws 1905, page 77, was a necessary condition precedent, *and the parties must be presumed to have had this statute in contemplation when making their contract.*"

In the case there was involved the further question as to which of the parties to that contract was obligated to bear the expense of making the place conform to the requirements of the statute with reference to sanitation, but that further question in no sense disturbs us in the present case; for, as already seen, the contract here provided the building should be a counterpart of the Seattle building, which, had it been complied with in the particulars referred to, would have avoided any offense to the city ordinance.

In the case of *Gerner v. Church,* 43 Neb. 690, 62 N. W. 51, an action brought upon a contract by which Gerner agreed to pay to the plaintiffs Church et al. a certain sum upon the erection by them of an opera house, no reference being made in the contract to the provisions of an applicable ordinance, the court said:

"It is a general rule . . . that the law in force upon any subject which is made the subject-matter of a contract is incorporated into and becomes a part of such contract, as much so as if the law were actually made a part of the agreement between the contracting parties. [Citing cases] . . . The ordinances of a city are within the rule that the law of the place where a contract is made enters into and becomes a part of such contract when the subject-matter of the contract is within the legislative jurisdiction of the city council. . . . The ordinances of the city were as much a part of Gerner's contract with Church & Oliver as if they had been written therein. In other words, the contract should be construed as though it read that Gerner would pay to Church & Oliver $200 when they erected an opera house covering a space of ground 100x142 feet on the site named, in accordance with the ordinances of the city of Lincoln regulating the construction of such buildings."

To the same effect see *Long v. Owen,* 21 Idaho 243, 121 Pac. 99, Ann. Cas. 1913D 465, and 6 R. C. L., page 855, § 243.

We are not concerned if the differences in the Tacoma building as compared with the Seattle building may be corrected without the expenditure of a large amount of money, it being sufficient to justify appellant in declining to accept the building to find, as we are convinced the proof shows, that the deviations are substantial and vital, especially considering the city ordinance and the character of the business for which the building was to be used.

The judgment is reversed and the cause remanded with direction to the lower court to enter judgment for appellant, as demanded in its complaint.

CHADWICK, C. J., TOLMAN, and MAIN, JJ., concur.