[No. 25475. Department Two. April 11, 1935.]

*In the Matter of the Application of* J. L. KANE, *for the Lease of Unplatted First-class State Shore Lands in Chelan County.*

PUGET SOUND POWER & LIGHT COMPANY, *Respondent,* v. J. L. KANE, *Appellant.*[1]

*Funkhouser & Twohy,* for appellant.

*Crollard & O'Connor,* for respondent.

HOLCOMB, J.—Appellant's assignor, Columbia Timber Products Company, a corporation, formerly held a ten-year lease of certain state shore lands of the first class, issued by the state land commissioner on October 30, 1923, for booming purposes. That corporation failed to file its annual license fee from and after

[1]Reported in 43 P. (2d) 619.

July 1, 1923, until July 1, 1929, on which date it was stricken from the record and dissolved by the secretary of state. At the expiration of the 1923 boom lease and as assignee of that lease, appellant applied for a re-lease of the property described in the former boom lease.

Respondent's predecessor, in 1930, acquired a per-petual flood easement from the state land commis-sioner, which included, with other state shore lands, those leased to appellant's assignor, and respondent's flood easement was made:

"Subject to the rights of the holders of booming lease No. 701, issued October 30th, 1923, for a term of ten years, and covering the unplatted first-class shore lands in front of lots 2, 3, 6 and 7, Section 14, Lots 1 and 2, Section 23, all in township 22 North, Range 20 E. W. M."

Thereupon, the present state land commissioner gave respondent notice of a hearing, and upon such a hear-ing, held that a new boom lease should issue which should be superior to the flood easement granted to respondent by the state in 1930.

Upon appeal from the commissioner's order, the trial court reversed the commissioner's decision, hold-ing: (1) That the 1923 boom lease did not bind the state to preserve its title in the same status so as to make a new lease at the expiration of the ten-year lease period; (2) that the state, acting through the commissioner, had jurisdiction to dispose of the state's title (or a flood easement therein), excepting only the then outstanding ten-year lease which the state had previously conveyed; and (3) that respondent's title, under its flood easement granted in 1930, disposed of the state's title to the extent of the flood easement therein granted, and any new lease or re-lease which the commissioner now has jurisdiction or authority to

make for boom purposes, must and can be only a lease subject to respondent's flood rights.

There is very little dispute in the evidence, most of it being documentary evidence. The record shows that at no time during the period of this boom lease was the property used by appellant or his assignor for any commercial or timber operations. The only use to which it was ever put was to gather driftwood from the Columbia river.

The lease contained this provision:

"The State of Washington reserves the right to approve or disapprove any assignment hereof, and also reserves the right to and may by an order of the Commissioner of Public Lands, cancel this lease, if the said land or any part thereof be used for any other purpose than the purpose of receiving and booming logs and other products of the forest in the manner herein provided."

The statute in effect when the boom lease of 1923 was issued and under which the claims of appellant are here made was Rem. Rev. Stat., § 7797-134 [P. C. § 6334-144]:

"The commissioner of public lands is authorized to lease to the abutting upland owner any unplatted first class tide or shore lands or in case the abutting uplands are not improved and occupied for residential purposes and the abutting upland owner has not filed an application for the lease of such lands, may lease the same to any person, firm or corporation for booming purposes.

"The commissioner of public lands shall prior to the issuance of any lease under the provisions of this section fix the annual rental for the lands and prescribe the terms and conditions of the lease. No lease issued under the provisions of this section shall be for a longer term than ten years from the date thereof and every such lease shall be subject to termination upon ninety days' notice to the lessee in the event that the commissioner of public lands shall decide that it

is to the best interest of the state that such tide or shore lands be surveyed and platted. Failure to use any lands leased under the provisions of this section for booming purposes, for such purposes, for a period of one year shall work a forfeiture of such lease and such land shall revert to the state without any notice to the lessee upon the entry of a declaration of forfeiture in the records of the commissioner of public lands. At the expiration of any lease issued under the provisions of this section, the lessee, his successors or assigns, shall have a preference right to re-lease the lands covered by his original lease, or any portion thereof if the commissioner of public lands shall deem it to the best interest of the state to re-lease the same, for succeeding periods not exceeding five years each at such rental and upon such terms and conditions as may be prescribed by said commissioner of public lands.''

The only question involved herein is the contention of appellant that the trial court wrongly construed the law upon the facts as shown.

It is, of course, well settled law that the existing statutes and the settled law of the land at the time the contract is made become a part of it and must be read into it. *Progress Amusement Co. v. Baker*, 106 Wash. 64, 179 Pac. 81.

It should be noted that the statute contains this provision:

''At the expiration of any lease issued under the provisions of this section, the lessee, his successors or assigns, shall have a preference right to re-lease the lands covered by his original lease, or any portion thereof if the commissioner of public lands shall deem it to the best interest of the state to re-lease the same, for succeeding periods not exceeding five years each at such rental and upon such terms and conditions as may be prescribed by said commissioner of public lands.''

The statute is unambiguous. It is wholly within the discretion of the commissioner whether any fur-

ther leasing will take place, and this discretion is clearly stated in the clause "if the commissioner of public lands shall deem it to the best interest of the state to re-lease the same."

Undoubtedly, the state, through the commissioner, under those provisions, had the right to either sell or lease the land, or any part thereof, or any interest therein, for any purpose which the statute authorizes and which the commissioner deems for the best interests of the state, always regarding any then outstanding lease term.

Furthermore, the boom lease actually issued in 1923 contains no provisions for re-leasing. It contains this provision:

"Said lessee further covenants and agrees to use the said lands in such manner as to do as little damage as possible thereto or to any adjoining lands of the state or to any oysters thereupon, and that upon or before the expiration hereof he will remove from said lands all piling, boom sticks and booming outfits and will leave the said land in the condition in which it is found by the said lessee."

The commissioner, having granted such a boom lease, was thereafter under no duty to continue to devote these shore lands to leasing for rental for booming purposes only.

It cannot be said that appellant and his assignor acquired any vested right to the boom lease site in the meaning of that statute further than to the extent of the existing term of the lease. That was subjected, however, to the perpetual flood right granted to respondent, which the commissioner undoubtedly had the right to grant.

The judgment of the trial court was right, and is affirmed.

BLAKE, STEINERT, MITCHELL, and MAIN, JJ., concur.