[No. 28015.   Department One.   January 17, 1942.]

W. J. Dopps *et al., Appellants,* v. A. P. Alderman, *Respondent.*[1]

[1]Reported in 121 P. (2d) 388.

*Stephen E. Chaffee,* for appellants.

*Richards, Conklin & Delle,* for respondent.

DRIVER, J.—This is an action to rescind a real estate contract, brought by plaintiffs, the purchasers, against defendant, the vendor. Plaintiffs have appealed from a decree denying them rescission and granting defendant specific performance of the contract. There will be no occasion to make special mention of appellant wife, and we shall therefore refer to Mr. Dopps as if he were the sole appellant.

The land in controversy, a forty-acre tract in Yakima county, was conveyed by the United States to the Northern Pacific Railway Company by a patent dated December 20, 1915, which contained the following reservation: "And there is reserved from the lands hereby granted, a right of way thereon for ditches or canals constructed by the authority of the United States." Respondent, Alderman, acquired title to the tract from the Northern Pacific Railway Company by a deed dated November 19, 1929, in which this reservation appeared: ". . . excepting and reserving unto the grantor, its successors and assigns, forever, all minerals of any nature whatsoever, including coal, iron, natural gas and oil, upon or in said land, together with the use of such of the surface as may be necessary for·

exploring for and mining or otherwise extracting and carrying away the same; . . ."

The first contract between the parties to this action for the sale of the land, with the appurtenant water rights, was dated January 3, 1927. It provided that the purchase price of eight thousand dollars should be paid one thousand dollars down and the balance by crop payments amounting to fifty per cent of the annual yields. All taxes and assessments which might be levied or might accrue were to be paid by appellant, the purchaser. At the time the contract was entered into, the land was in the Granger irrigation district, it had been receiving water from the district's irrigation system, and was subject to such assessments as the district lawfully might levy against it.

Appellant went into possession of the tract and made the payments as provided by the contract until February 8, 1934. Respondent was not satisfied with the crop-share method of payment, and, after some preliminary discussion, on that date, the parties entered into a new contract providing for fixed annual cash installments. The present action is based upon this second contract. Its pertinent parts are as follows:

"IT IS HEREBY MUTUALLY AGREED by and between A. P. Alderman, party of the first part, and W. J. Dopps, party of the second part, that the said party of the first part will sell to said party of the second part, his heirs or assigns, the said party of the second part will purchase of the said party of the first part, his heirs or assigns, the following described real estate situate in Yakima County, State of Washington, to-wit: The Southwest Quarter of the Southeast Quarter of Section 23, Township 10 North, Range 21 E. W. M., together with the water right thereunto belonging on the following terms:

"1. The purchase price for said premises is the sum of $2,000.00 payable as follows, to-wit: $400.00 on December 1st, 1934, $500.00 on December 1st, 1935,

$500.00 on December 1st, 1936, and $600.00 on December 1st, 1937, with interest at the rate of six percent per annum, . . .

"2. The party of the second part agrees to pay all taxes and assessments now against said premises and hereafter to accrue against the same, which said assessments and taxes shall be paid prior to the time a deed is taken by the irrigation district or to the county for the same. . . .

"Upon the full payment of the purchase price the first party agrees to convey said premises by a good and sufficient deed subject however, to all taxes and assessments against the same.

"5. Time is of the essence of this contract, and in case of failure of the said party of the second part to make either of the payments or perform any of the covenants on his part, within forty days after being given written notice requiring performance, this contract may be forfeited and determined at the election of the said party of the first part; . . .

"6. It is expressly understood and agreed that this contract supercedes the contract of January 3rd, 1927, which said contract is by mutual consent cancelled and terminated."

Appellant made all the payments under this later contract except the last one of six hundred dollars due December 1, 1937. On January 5, 1938, the parties met by prearrangement at a bank in Sunnyside, near their places of residence, and appellant at that time tendered the final payment to respondent. However, the deed of conveyance which respondent produced contained a mineral reservation similar to the one in his deed from the railway company. Appellant objected to the reservation and refused to accept the proffered deed. Several days later, respondent went to appellant's home in a further effort to persuade him to accept the deed, but to no avail. The testimony is conflicting as to just what was said by the parties at these two meetings. It has an important bearing on one of the contentions

advanced by appellant and will be discussed more fully later on in this opinion.

Within a few days after the second meeting, respondent called at the office of the Northern Pacific Railway Company in Seattle to get the company to release its mineral reservation, but was informed that it would be necessary to refer the matter to the company's offices in St. Paul. Subsequently, after getting a favorable recommendation from its chief geologist at Billings, the company granted respondent's request; and, on February 8, 1938, its quitclaim deed releasing the reservation, which had been executed in St. Paul on February 3, 1938, was forwarded from the company's Seattle office to respondent's attorneys in Yakima.

In the meantime, appellant had started the present action, filing the complaint on January 24th. Respondent answered the complaint and tendered into court a deed for the appellant with the mineral reservation omitted therefrom. Thereafter, appellant amended his complaint, advancing additional grounds for the rescission of the contract, which grounds will be stated in our discussion of appellant's contentions on this appeal. The case was tried to the court, resulting, as has been stated, in a decree in favor of the respondent.

Appellant contends that he was entitled to rescind the contract because, upon his tender of the final payment of the purchase price, respondent failed, refused, or was unable to convey good and marketable title, free of encumbrances, in the following particulars: First, the land was subject to a reservation, in favor of the United States, for a right of way for canals or ditches; second, the deed proffered by respondent, upon tender of final payment, was subject to a reservation of minerals by the Northern Pacific Railway Company; and, third, although appellant was entitled, under the contract, to a paid-up water right, the right was, in fact,

encumbered by unpaid construction costs of the Granger irrigation district. We shall separately discuss the three phases of appellant's contention in the order stated.

■ ■ *First:* The right of way reservation was placed in the patent in compliance with the following provision of a Federal statute, 43 U. S. C. A. § 945 (26 Stat. 391):

"In all patents for lands taken up after August 30, 1890, under any of the land laws of the United States or on entries or claims validated by the Act of August 30, 1890, west of the one hundredth meridian, it shall be expressed that there is reserved from the lands in said patent described a right of way thereon for ditches or canals constructed by the authority of the United States."

This statute, manifestly designed to further the government's reclamation policy, applies to all lands west of the one hundredth meridian on which patent has been issued after August 30, 1890; and the reservation constitutes an inseparable incident and burden of ownership of such land. The patent for the land in controversy was issued in 1915, and it was placed of record in Yakima county in January, 1916, long before the date of the first real estate contract between appellant and respondent. In accordance with a well-established rule, a statute which affects the subject matter of a contract, in contemplation of law, is incorporated into and becomes a part thereof, provided, of course, that the statute is in effect at the time the contract is made. Mr. Justice Brandeis, speaking for the court in *Farmers and Merchants Bank, etc. v. Federal Reserve Bank*, 262 U. S. 649, 67 L. Ed. 1157, 43 S. Ct. 651, 30 A. L. R. 635, concisely stated the rule as follows:

"Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had

been expressly referred to or incorporated in its terms. This principle embraces alike those laws which affect its construction and those which affect its enforcement or discharge."

The following are some of the cases in which this court has subscribed to and applied the rule: *Manville v. Weaver*, 53 Wash. 408, 102 Pac. 36; *Progress Amusement Co. v. Baker*, 106 Wash. 64, 179 Pac. 81; *In re Kane*, 181 Wash. 407, 43 P. (2d) 619; *Foss v. Golden Rule Bakery*, 184 Wash. 265, 51 P. (2d) 405. However, neither party has called to our attention any case of this court which is directly in point on the question now under consideration.

Appellant cites two decisions from other jurisdictions. The first is by the second district court of appeals of California, *Cosby v. Danziger*, 38 Cal. App. 204, 175 Pac. 809. The court held that, where an executory contract called for conveyance of certain land upon payment of the purchase price, by good and sufficient deed, free and clear of all encumbrances, the vendor had not complied by the tender of a title based upon a patent from the United States containing a right of way reservation for canals or ditches identical to the reservation here under consideration. In the California case, however, an exemplified copy of the patent had not been placed of record in the county where the land was situated until two years after the date of the contract. Thus, in that case, at the time the contract was made, the purchaser did not have constructive notice of the contents of the patent, or that it was issued after August 30, 1890. That the court considered the circumstance of lack of notice of importance, is indicated by the following excerpt from the opinion:

"There is no evidence tending to show that at the time when the contract was made appellant [the pur-

chaser] had any knowledge or notice of the source of respondent's title. Even if it could be assumed that the appellant must have known that the title rested upon a federal basis, yet there is no evidence that he knew or had notice that the plaintiff's patent was of later date than August 30, 1890, and that therefore it necessarily would contain the reservation to which we have referred."

The other case cited by appellant is *Werth v. Willer*, 64 N. D. 119, 250 N. W. 543. There, an executory contract provided that the vendor should convey certain land, by good and sufficient warranty deed, free of encumbrances. The patent by which title passed from the United States contained a reservation of coal deposits, and the court held that this entitled the purchaser to rescind even before the time fixed for final payment of the purchase price. The opinion does not cite any act of Congress pursuant to which the reservation in question was inserted in the patent, and we are unable to determine whether the reservation was made in obedience to the mandatory requirements of a general statute such as we have in the case at bar. The cited case does not mention the rule that a statute, in effect at the time of the making of a contract and germane to its subject matter, is deemed to enter into, and form a part of, the contract.

Respondent directs our attention to *Normandy Beach Properties Corp. v. Adams,* 107 Fla. 583, 145 So. 870. In that case, the vendor, under an option contract for the sale of submerged lands in Biscayne Bay, Florida, had agreed, upon payment of the purchase price, to furnish a good and marketable title, free of all encumbrances. The vendee brought the action to cancel the contract and to recover the money paid thereon on the ground that the vendor could not perform because of statutory mineral reservations in favor of the trustees of the internal improvement fund

and similar reservations to the United States for the purpose of commerce and navigation. The court held that these reservations in the title did not constitute encumbrances justifying rescission of the contract. The court said:

"The vendor may, as was done here, covenant against encumbrances but such covenants have reference to those encumbrances which can be lifted by the vendor or by the vendee on application of the purchase money. An option contract to sell with covenant against encumbrances may be rescinded by the vendee in case the vendor cannot or will not lift the encumbrances or the vendee cannot do so by application of the purchase money. . . .

"This rule does not apply to reasonable restrictions imposed by public authority on the use of property, such as statutory reservations in favor of the state or the federal government or their duly authorized agencies, nor does it apply to rights of way or easements of a public nature when the vendee at the time of purchase has notice of their existence. [Citing cases.]

"The reservation in favor of the Trustees of the Internal Improvement Fund and those in favor of the United States in aid of commerce and navigation were not such as could be lifted by the vendor or by the vendee on application of the purchase money but they were provisions of law applicable to the subject matter of the contract and were a part of the contract whether expressed or referred to in it or not. The vendee was charged with knowledge of them, and is conclusively presumed to have contracted with reference to them."

There is nothing in the opinion, it should be noted, to indicate that the vendee had any actual knowledge of the encumbrances in question.

Maupin on Marketable Title to Real Estate (3rd ed.), p. 384, § 143, in a discussion of covenants of warranty and for quiet enjoyment, states: "The purchaser must also take notice of public statutes restricting the use of the granted premises; and such restrictions constitute no breach of the covenant of warranty." A foot-

note to the text cites, in support of the foregoing statement, *Richardson-Kellett Co. v. Kline,* 70 Fla. 23, 69 So. 203. There, a conveyance of certain "Everglades" swamp land reserved a right, in favor of the state, to build a drainage canal through the granted premises. It was held that this did not constitute a breach of a covenant against encumbrances, the right in question being secured to the state by statute.

As we have pointed out, each of the two cases cited by appellant, namely the California case of *Cosby v. Danziger,* and *Werth v. Willer,* decided by the North Dakota court, differs in some respects from the case at bar; but, if they be regarded as essentially indistinguishable, then they are squarely in conflict with the Florida cases. We think the Florida rule should be applied in the present case. It is our conclusion that the appellant did not have the right to rescind the contract on account of the right of way reservation.

■ *Second:* Was appellant entitled to rescind the contract because of the mineral reservation in favor of the railway company? We have previously mentioned the conflict in the testimony as to what transpired when appellant tendered the final payment and demanded a deed. The trial court did not make findings of fact either formally or by way of recital in its decree, but the court did file a comprehensive and well-considered memorandum opinion, in which it had this to say of the testimony in question:

"They looked over defendant's [respondent's] copy of the contract and found that it contained no provision concerning mineral reservations. Defendant then inquired as to what he could do, and plaintiff [appellant] advised him to see Mr. Chaffee or some other attorney. Mr. Blystone [appellant's witness], on cross examination, testified that plaintiff stated 'I can't accept this deed,' to which defendant answered, 'I haven't those rights; I don't know how to get them,' or some such

words to that effect; to which plaintiff replied, 'Well, I advise you to see Mr. Chaffee, or some lawyer, right away.' Defendant testified that he then went to see Mr. Chaffee, but was advised that he was plaintiffs' attorney, and defendant thereupon went to Mr. Boose, another Sunnyside lawyer. Defendant further testified that Mr. Boose advised him that he would not take the case, but that he would suggest either compromising the matter with plaintiff, or securing a deed to the mineral rights from the railroad. It then appears from the testimony that the defendant called at the home of the plaintiffs on January 8th, at which time he offered to pay the plaintiffs $200.00 if they would accept the deed, and which offer the plaintiff, W. J. Dopps, refused. Defendant testified that he then stated that he would go to the railroad and get a deed for the mineral rights, if he could, to which the plaintiff replied 'all right.' The plaintiffs, W. J. Dopps and Mrs. Dopps, each testified that defendant then stated that he could not give clear title; that he'd be back in three days to advise what he would do. Within the next few days the defendant conferred with Grover Conklin, one of his present attorneys, and thereafter and on January 14th, went to Seattle in an attempt to secure a deed to the mineral rights from the Western Land Office of the Northern Pacific Railway Company.

. . .

"It seems to the court that both on January 5th and January 8th the plaintiff agreed to extend to the defendant further time in which to remove the mineral reservations. . . . The court believes that defendant acted with reasonable promptness in securing the deed to the mineral reservations from the railroad on February 11th." (Italics ours.)

The trial court heard and saw the witnesses and, in passing upon their credibility, was in a favored position. Moreover, we think that its conclusions are supported by the record. One thing that stands out in the voluminous and conflicting evidence on this phase of the case is that at neither of the conferences of the

parties, at the bank and at appellant's house, were the negotiations relative to the mineral reservation definitely and finally concluded. At neither meeting did appellant make and communicate to respondent an unqualified, present election to rescind the contract. There being, in effect, an agreement that respondent should have some indefinite additional time, he had a reasonable time in which to remove the mineral reservation, and appellant could not peremptorily rescind the contract by the commencement of an action without giving respondent further notice or opportunity to perform. Skoog v. Columbia Canal Co., 63 Wash. 115, 114 Pac. 1034; Banning v. Commercial Orchards Co., 90 Wash. 554, 156 Pac. 547; Karr v. McAvoy, 175 Wash. 634, 28 P. (2d) 118.

The last cited case quotes with approval the following language of the opinion by Judge Chadwick in the Banning case:

" 'If the contract be treated as one fixing a definite time, appellant, by his delay and conduct with reference to the property, has waived the element of time and concurrent delivery of the deed, and must, if he would rescind, give notice of his intention to claim his equitable rights, that is, to rescind unless a deed is forthcoming within a reasonable time thereafter.' "

Appellant particularly stresses Walsh v. Colvin, 53 Wash. 309, 101 Pac. 1085, and Finch v. Sprague, 117 Wash. 650, 202 Pac. 257. Neither case is apt, because no mutual agreement or express or tacit consent of the other party that the contract vendor should have additional time in which to perform was there involved. The opinion in the Walsh case states:

"If it should appear on a retrial that no tender of the purchase price was made or that the appellants acquiesced in or assented to the delay, of course they cannot recover, but if a proper tender and demand was

made and respondent Colvin refused to perform and was unable to give title, the appellants will be entitled to recover what they paid on the contract, with interest." (Italics ours.)

We think the trial court correctly concluded, in view of the conduct and conversations of the parties, that respondent had a reasonable time to remove the mineral reservation encumbrance, and that the time which he consumed in so doing, under the circumstances, was not unreasonable.

■■ *Third:* As has been stated, the tract of land which is the subject of the instant action is situated in the Granger irrigation district. The district purchased a water right from the United States under a contract which provided that construction costs should be paid in semiannual installments, and that the district should levy assessments to meet such installments, as well as to defray the annual operation and maintenance charges. At the time the appellant tendered final payment and demanded a deed, a substantial portion of the construction costs had not been paid by the district. This, appellant asserts, constituted an encumbrance upon the water right not contemplated in the contract. For convenience of reference, we again set forth the contract provisions relative to the payment of assessments:

"The party of the second part [appellant, the purchaser] agrees to pay *all* taxes and *assessments now against said premises and hereafter to accrue* against the same, which said assessments and taxes shall be paid prior to the time a deed is taken by the irrigation district or to the county for the same. . , . Upon the full payment of the purchase price the first party [respondent, the vendor] agrees to convey said premises by a good and sufficient deed *subject however, to all taxes and assessments against the same.*" (Italics ours.)

The contract clearly and definitely provided that the purchaser should pay *all* assessments outstanding at the time of the contract and to accrue in the future. No distinction or exception was made as to that portion of the assessments levied by the irrigation district to defray construction costs. Over respondent's objection, appellant introduced certain testimony, and offered other testimony, which the trial court rejected, to the effect that it was the intention of the parties that respondent, the vendor, should pay the irrigation district construction charges. Appellant could not, by parol evidence, thus flatly and directly contradict the plain terms of the written contract. The instrument is clear, complete, and unambiguous and embodies all the essentials of the transaction. Appellant does not claim fraud or mutual mistake of the parties. He is not in a position to invoke any recognized exception to the so-called parol evidence rule. In the recent case of *Seattle v. Northern Pac. R. Co., ante* p. 247, 121 P. (2d) 382, we said:

"It is, of course, the duty of courts, when construing questioned contracts, to search out the intent of the parties, but that duty arises out of an ambiguity or omission that demands the reception of testimony to illustrate their intent or to harmonize apparent conflicts. The statement just made is taken almost verbatim from *Kanaskat Lbr. & Shingle Co. v. Cascade Timber Co.,* 80 Wash. 561, 142 Pac. 15."

We call attention to the numerous other decisions of this court cited in the same opinion immediately following, and in support of, the foregoing quoted statement. See, also, *Asher Bros. General Illuminating Co. v. General Illuminating Co.,* 193 Wash. 105, 74 P. (2d) 495; *Sears, Roebuck & Co. v. Nicholas,* 2 Wn. (2d) 128, 97 P. (2d) 633.

What has been said with reference to the three as-

pects of appellant's principal contention, we think, disposes of all appellant's assignments of error, and we shall not discuss them further.

Judgment affirmed.

ROBINSON, C. J., STEINERT, BLAKE, and MAIN, JJ., concur.

[1]Reported in 121 P. (2d) 340.