UNITED STATES of America,
Plaintiff,

v.

3.08 ACRES OF LAND, MORE OR LESS, Situated IN BOX ELDER COUNTY, Utah, Utah Power and Light Company, et al., and Unknown Others, Defendants.

No. C 129–61.

United States District Court
D. Utah, N. D.
Sept. 13, 1962.

William T. Thurman, U. S. Atty., Craig T. Vincent, Asst. U. S. Atty., Salt Lake City, for plaintiff.

Marvin J. Bertoch, Sidney G. Baucom, Salt Lake City, for defendants.

CHRISTENSEN, District Judge.

This is an action brought by the United States of America as plaintiff to condemn a right of way across a parcel of real property owned by the defendant Utah Power and Light Company for the purpose of constructing a canal.

The use for which the real property is to be taken is stated in the complaint to be a public use in connection with the construction, operation and maintenance of the Willard Canal, Weber Basin Project, Utah. The estate to be taken according to the complaint is a right of way for that canal and the right of way is described by metes and bounds as a strip of land 185 feet wide, containing 3.08 acres more or less, situated in Box Elder County, State of Utah. Subsequent proceedings have indicated that the Government believes that it is already entitled to the right of way sought to be condemned by virtue of a prior reservation, as will be discussed more fully hereafter. Actually it appears that the Government is seeking to condemn only any enlargement of the claimed existing easement that may be found to result from its contemplated use.

The plaintiff claims that the property in question was acquired by the State of Utah from the United States by a selection list transfer approved by the United States Department of the Interior on June 19, 1907; that said land was patented by the State of Utah to Charles W. Nibbley on May 2, 1917; that said land has by mesne conveyances become the property of the defendant Utah Power and Light Company; and that the plaintiff already has the granted and reserved right to construct a canal across said land without paying the defendant more than nominal compensation, estimated in the declaration of taking to be One Dollar.

The defendant Utah Power and Light Company does not contest the right of the plaintiff to condemn a right of way in the property in question but claims that it is entitled to fair and just compensation for the interest taken in the amount of $350.00 per acre for the 3.08 acres, or $1078.00, plus further compensation for damages to its remaining interest in the property taken and for consequential damage to the remaining portion of the parcel of land involved or to the entire generating or distributing system of which the property taken is an integrated part, in the amount of $18,900.00. The Power Company asserts that the parcel of land of which the condemned portion is a part was acquired by it for use as a site for towers to support high tension wires to be integrated with its generating and distributing system; that the towers had been designed and their construction was imminent prior to the taking by the government, but that due to the canal banks to be constructed on the condemned property and the boom necessarily to be used on those canal banks for maintenance of the canal, the Utah Power and Light Company has had to redesign its towers to increase their heights so that the power lines suspended between them and over the canal will be at a height required by law to avoid contact with plaintiff's equipment. It is alleged that the increased cost of the construction of the higher towers compared with those originally designed will amount to $11,900.00. It is further contended that the defendant Power Company will have to bear $7,000.00 as additional cost to strengthen a bridge which will accommodate the heavy equipment necessary to the defendant's operations, since direct

access by such heavy equipment without the strengthened bridge will be cut off by the proposed canal.

All of the other parties defendant have either disclaimed or defaulted. The following facts have been stipulated between the plaintiff and the Utah Power and Light Company:

The canal in question will have a maximum water gravity flow capacity of 950 cubic feet per second and a maximum flow capacity of 500 cubic feet per second with a bottom width of 30 feet and a maximum water surface width of 70 feet. It will be 90 feet wide inside the top of the embankments and will have an overall width from embankment toe to embankment toe of approximately 180 feet where it crosses the property of the Power Company. Drains and ditches will be constructed alongside the canal wherever necessary to carry off surface water. The earth embankments along the sides of the canal will have an average height of 8 feet above the average ground level of the said defendant's property. The fair market value of the interest in the land itself, as taken by the plaintiff in this action, is $350.00 per acre.

The sole contested issue of fact as reserved in the pre-trial order in the words of the parties is:

"What is the amount of the consequential damage done to defendants' remaining interest in the property taken for the easement and to the remaining portion of the parcel of property out of which the easement is carved, or to the remainder of the integrated power system. To approach it another way, what is the amount of expense necessary to enable the defendant to make its remaining land and its remaining interest in the land taken usable to the extent and for the same purpose it was used or to be used prior to the taking. To express the measurement of damage in still a third alternative manner: Has the market value of the entire power system of the defendant been reduced in value

by the taking, and if so, to what extent."

The parties expressed in the pre-trial order the contested issues of law, in addition to those implicit in the foregoing issue of fact, as:

"(a) Whether or not plaintiff has the reserved right to construct the ditch known as the 'Weber Canal' across such real property with respect to any and all of the acreage classifications * * * by virtue of the laws of the State of Utah without paying defendant Utah Power and Light Company more than nominal compensation and

"(b) Whether or not defendant Utah Power and Light Company is entitled to compensation for the alleged consequential damage, or cost of restoration, or reduction of market value, if you will, described above."

This case is perhaps the only contested civil case in recent years in which I have been persuaded by counsel not to hold an actual pre-trial conference. Counsel indicated a reluctance to go to the trouble of appearing in the Northern Division for the conference and indicated that the issues were simple and the evidence could be substantially stipulated. I therefore signed a stipulated "Pre-Trial Order" without holding an actual pre-trial conference. Developments have indicated that even in the seemingly simple cases, actual pre-trial conferences are beneficial and that rarely, if ever, can time be saved or the interest of justice promoted by dispensing with them.

Implicit in the pre-trial order is the indication that defendant Power Company did not contest the necessity for the "taking" and that the only issue of ultimate fact involved damages. Both parties, at the time the execution of the pre-trial order was under consideration and at the time of the trial, indicated that the damages to the Utah Power and Light Company were occasioned, aside from the value of any interest in land actually taken, by the eight foot banks of

the canal and by the plan and necessity of the government to operate from those banks a 50 foot boom for the purpose of cleaning the canal. This combination, the evidence established, necessitated the raising, as compared with their acceptable height, of the planned towers supporting the Power Company's transmission lines which would not be necessary were it not for the elevated banks and the necessary boom, and which raising entailed additional expense to the Power Company of $11,900.00.

The court finds in the latter connection that the defendant's increased cost of construction of electrical facilities necessitated by plaintiff's contemplated use of the land taken, including the utilization of the boom for maintenance of the canal, will be the sum of $11,900.00; that by reason of the establishment of the canal defendant's access to its remaining property by its necessary heavy equipment will be destroyed unless the said defendant incurs an additional cost of $7,000.00 in supporting a public bridge designed, without such support, for merely ordinary vehicular traffic; and that by these amounts the value of the defendant's integrated power system may fairly be regarded as depreciated by the taking. These findings will become important only if I am wrong in some or all of my other findings or conclusions.

Neither the pre-trial order nor the evidence adduced at the trial indicated what part of this expense or depreciation would be due to the maintenance of the elevated banks of the canal and what additional part, if any, would be attributable to the contemplated operation by the Government of the 50 foot boom in connection with the maintenance of the canal. While the Government itself accepted, during the course of the trial, the thesis that this proceeding was designed to assure to it the right to operate such boom and that it would be necessary for the Power Company to raise its transmission lines to permit such operation, there was no specification in the pre-trial order, nor in notice of taking, that this operation was included as among the rights sought to be condemned or confirmed in the Government. The significance of this refinement became apparent only from the briefs filed following the trial, which briefs changed the original emphasis upon the question of whether the Government already had a right of way for the maintenance of a canal across plaintiff's land to one of whether, even though some right of way existed, it included the right to maintain eight foot banks along the canal and the use of the boom in connection with the maintenance of the canal.

The Government now maintains that the question of the enlargement of a right was not involved in the issues reserved in the pre-trial order and thus should not be considered while the defendant Power Company points out that the question of enlargement directly relates to the amount of damages to which the Power Company is entitled within the purview of the question of damages expressly reserved in the pre-trial order. I must observe, too, that the government hardly can contend that this is only a suit for a declaration that whatever rights it seeks are included in an existing reserved right of way when it has seen fit not simply to ask for such a declaration, but to ask that any and all interests of the defendant Power Company in the land described be condemned for the purpose of permitting the Government to establish and maintain the canal by means of all necessary structures and equipment.

In 1905 the Legislature of the State of Utah enacted the following statute, now 65-2-3 Utah Code Annotated 1953, which reads as follows:

"There is hereby granted over all lands now or hereafter belonging to the state of Utah a right of way for ditches, tunnels, telephone and transmission lines, constructed by authority of the United States. All conveyances of state lands hereafter made shall contain a reservation of such right of way."

In 1907, after the enactment of this statute, the State of Utah acquired the

land in question from the United States Government. In 1917 it was sold by the State under patent to George W. Nibbley. The grant in the patent contained the following provision:

"Subject to any easement or right of way as may have been established or acquired according to law, over the same or any part thereof and subject also to all rights of way for ditches, tunnels and telephone and transmission lines that may have been constructed by authority of the United States."

The defendant contended at the time of the trial that the effect of the patent was to limit the reserved right of way to easements established and perfected while title to the property was still in the State. There seems little doubt that if the wording of the patent is accepted at face value this might be the effect. The defendant further contended that independent of the wording of the patent itself, the State statute would have the same effect. On the latter point it cited United States v. Pruden, 172 F.2d 503 (10 Cir. 1949), interpreting a similar Oklahoma statute.

Recognizing the significant difference between the wording of the patent and the statute, and in harmony with the views I expressed at the trial, I am of the opinion that not the Pruden case but Ide v. United States, 263 U.S. 497, 44 S.Ct. 182, 68 L.Ed. 407 (1924) controls the resolution of this question for the following reasons: The Pruden decision was an interpretation of the Oklahoma statute which was in part at least based upon Oklahoma decisions of which there are no counterparts among the Utah adjudications. But more important, primary reliance was placed in Pruden upon the interpretation of the Federal statute governing the reservation of rights of way for highway purposes, whereas, as pointed out in Ide, there is a directly analogous Federal statute dealing with canals, on the very language of which the Utah statute is based, and which Ide interprets directly contrary to the conclusion reached in Pruden.

I see no escape from the controlling effect of the Ide doctrine which interpreted the very statute which Utah used as the model for its own statute with reference to the reservation of a right of way for canals. See also Northern Pacific Railway Company v. United States, 277 F.2d 615 (10 Cir. 1960); Green v. Willhite, 160 F. 755 (Cir.C.D.Idaho 1906); United States v. Anderson, 109 F.Supp. 755 (D.C.E.D.Wash.1953); United States v. Fuller, 20 F.Supp. 839 (D.C.Idaho 1937); Dopps v. Alderman, 12 Wash.2d 268, 121 P.2d 388 (1942).

Nor does the fact that the patent in question uses language indicating a different interpretation change the effect of the statute, whether this circumstance be looked upon as one relating to the legislative history of the statute to be looked to in its interpretation or as an argument that the form of the patent could override the law itself. On the former subject, the evidence indicated that while this particular form of the patent was utilized in 1917, thereafter the State Land Board changed the form of similar patents to conform to the wording of the statute rather than to indicate that the right of way reserved applied only to canals that had been constructed theretofore. It is more reasonable to suppose that the Land Board discovered the invalidity of the wording of the patent in question and changed other patents to conform with the controlling law than to suppose that the Legislature of the State of Utah by failing to pass a law correcting the form of the patent in question put its implied stamp of approval upon the interpretation of the Land Board. In view of this evidence the case of State v. Hatch, 9 Utah 2d 288, 342 P.2d 1103 (1959), so strongly relied upon by the Power Company loses point.

In any event, it is well settled that in construing the effect of a public grant such as a patent the law in force at the time the grant is made controls. The world at large is charged with notice of a conveyance and its limitations established by a statute, and a provision in a patent directly contrary to governing law

is void to the extent of such conflict. Gleason v. White, 199 U.S. 54, 25 S.Ct. 782, 50 L.Ed. 87 (1905); Morris v. United States, 174 U.S. 196, 19 S.Ct. 649, 43 L.Ed. 946 (1899); Burfenning v. Chicago St. P. M. & O. Ry. Co., 163 U.S. 321, 16 S.Ct. 1018, 41 L.Ed. 175 (1896); Knight v. United Land Ass'n., 142 U.S. 161, 12 S.Ct. 258, 35 L.Ed. 974 (1891); Iron Silver Min. Co. v. Campbell, 135 U.S. 286, 10 S.Ct. 765, 34 L.Ed. 155 (1890); Glasgow v. Baker, 128 U.S. 560, 9 S.Ct. 154, 32 L.Ed. 513 (1888); Coffee v. Groover, 123 U.S. 1, 8 S.Ct. 1, 31 L.Ed. 51 (1887); United States v. Stone, 2 Wall. 525, 69 U.S. 525, 17 L.Ed. 765 (1865); Stoddard v. Chambers, 2 How. 284, 43 U.S. 284, 11 L.Ed. 269 (1844); The Mayor, etc. of New Orleans v. De Armas and Cucullo, 9 Pet. 224, 11 Curt. 338, 34 U.S. 224, 9 L.Ed. 109 (1835); Polk's Lessee v. Wendal, 9 Cranch 87, 13 U.S. 87, 3 L.Ed. 665 (1815); United States v. State of Washington, 233 F.2d 811 (9 Cir. 1956). See also Burke v. Southern P. R. Co. 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527 (1914); United States v. Fuller, 20 F.Supp. 839 (D.C. Idaho, 1937); Walpole v. State Board of Land Com'rs., 62 Colo. 554, 163 P. 848 (1917).

I conclude that the Government without reference to the condemnation proceedings had, and has, an existing right of way to establish and maintain the canal in question together with all appurtenances reasonably necessary for such canals.

This brings us to the point which was not defined in the pre-trial order but which lurks within the issues specified and which now has been urged by the defendant Power Company, i. e. that even though a right of way for the maintenance of a canal exists, the elevation of the banks to eight feet and the maintenance and operation of the boom necessitating the raising of the transmission lines of the Power Company constitute an enlargement of that right, which enlargement must be condemned and for which compensation must be paid.

■ ■ I think it is a matter of common knowledge of which the court may take judicial notice, that canals in addition to bottoms and sides frequently, if not invariably, have banks. It is reasonable to suppose that the Legislature in making provision for a reservation of rights of way for canals contemplated that the easement so reserved would be for the purpose of constructing and maintaining banks of canals, among other things. In this mountainous region where hydraulic gradient must be maintained over irregular terrain it may not be supposed that the maintenance of canals without banks necessarily was contemplated. On the contrary, not only may banks of some sort be deemed reasonably necessary to the enjoyment of the easement reserved in favor of the Government, but we must accept them as within the contemplation of the statutes reserving the easement.

If the easement reserved includes the right to maintain canal banks, I cannot find that their construction and maintenance to a maximum of eight feet above the natural terrain in the area in question would be unreasonable. If banks can be maintained above the natural terrain to any degree within the contemplation of the easement, I would think that they could be maintained to the above extent, depending upon the reasonable necessities as determined by reclamation officials. The pre-trial stipulation and order accept the necessity for the contemplated construction, including the banks. There is no evidence or agreements from which I could find that the construction and maintenance of the eight foot banks are beyond the scope of the easement, and I find that they are reasonably necessary to carry out the authorized purposes of the canal.

Whether the same can be said about the right to maintain and operate a fifty foot boom on the top of the banks is a more difficult question. But before dealing further with this question two preliminary points raised by the Government should be considered.

Consideration of the issue of enlargement of the heretofore reserved right of way is not precluded by the pre-trial order. While the matter of enlargement was not specifically mentioned at the trial the pre-trial order stipulated by the parties did reserve the question of damages for any taking. The defendant would not be precluded from rightfully claiming damages for a portion of the interest actually taken although it had asserted without warrant a right to recover damages for the whole. If the construction of the canal with ordinary banks and appurtenances would not amount to a taking, the maintenance and operation of the fifty foot boom might; and, if it did, the question of damages for the taking of an easement to operate the boom would be within the purview of the pre-trial order. The very fact that this case started out and still continues on the face of the complaint as a pure and simple action to condemn a right of way without reference to any prior rights now claimed by the Government does not put the latter in a very good position now to be technical in excluding from consideration a resolution of all of the issues necessarily implied by the subsequent positions of each party as acquiesced in by the other.

■ Nor do I think the position of the Government is correct that damages otherwise recoverable for an easement to operate the boom would amount merely to consequential damages for which the defendant Power Company could not recover for the latter reason. It is true that a firm Federal rule denies recovery of consequential damages unless they are incidental to an actual taking. United States v. Willow River Power Co., 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101 (1945); Northern Trans. Co. v. Chicago, 99 U.S. 635, 25 L.Ed. 336 (1879); Batten et al. v. United States, 306 F.2d 580 (10 Cir. 1962); Harris v. United States, 205 F.2d 765 (10 Cir. 1953). Apart from the question of whether there already exists a right of way in favor of the Government for the purpose, the very statement of the rule and the latest expression of our Circuit Court in the Batten case

make clear that the claimed enlargement could not be considered as causing mere consequential damage not incidental to an actual taking. In Batten, recovery was denied because there was not a physical invasion of the air space over the claimant's land and no related taking in the view of the majority of the court, but over the dissent of Judge Murrah. Compare United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), where there was an actual invasion of the air space above the claimant's land by low flying aircraft and, hence, a compensable taking and a recovery of consequential damages.

■ If it does not already have that right, the Government really is asking now for an easement to make an extraordinary use of the air space above the canal for the operation of the fifty foot boom. This in substance was the statement that the Government attorney confirmed at the last hearing. If it needed an easement I suppose that no one would assert that the Government should not pay for it. It would seem to make no difference in principle that the additional easement sought to be obtained extends vertically above the banks of the canal if indeed it is an additional easement that must be condemned. But is it?

There is a suggestion in the evidence that there may be new types of equipment which could be constructed and operated without entailing the necessity of raising the defendants' lines or that dredging equipment might be employed. The preponderance of the evidence, however, indicates, and I find, that upon the basis of equipment in existence the only practical way that the canal can be cleaned at present, and certainly the normal and reasonable means under current conditions, is to utilize a fifty foot boom with dragline, the banks of the canal at the water line being some seventy to ninety feet apart, and it being impracticable because of the construction of the canal and the necessity of maintaining water in it almost all of the time to move equipment into the bottom.

I further find for completion of the record in the event of appeal that in order to construct its transmission lines at a height sufficient to permit the operation of such a boom the defendant necessarily will incur expenses of $8707.00 more than would be necessary if the transmission lines were elevated and constructed to adjust simply to the extra height of the eight foot banks with requisite safety margin. Such finding, however, is not essential to a disposition of the case if my decision stands.

Not without some doubt, I have concluded, and find, that right to maintain such a canal in this ordinary and reasonable fashion, including the operation of the fifty foot boom under existing conditions, is a part of the right and easement reserved by operation of the original grant and subsequent conveyances and the reservation incorporated therein under the law.

It must be acknowledged that at the time of the original reservation such equipment as a fifty foot boom and dragline for the purpose of cleaning canals was not a usual thing, and may not even have been in use at all. Such an operation was not one that could be deemed uncontemplated in principle. As a matter of fact, a one hundred foot wide canal probably was not ordinary construction in those days. It probably was not contemplated that such a canal as the one in question here would run water both ways—in the summer by means of pumping from the canal and during the non-irrigation seasons into the canal. But if we must limit construction or maintenance within the protection of the easement to exactly what was well known or practiced then, the basically continuing purpose of the reservation would be frustrated.

█ The right reasonably to maintain such a canal, including the right to operate the fifty foot boom if reasonably necessary under existing conditions, must be considered to be included in the reserved easement. The general rule is that while an easement holder may not increase the servitude upon the grantor's property by enlarging on the easement itself, it is entitled to do what is reasonably necessary for full and proper enjoyment of the rights granted under the easement in the normal development of the use of the dominant tenement. Kogod v. Cogito, 91 U.S.App.D.C. 284, 200 F.2d 743 (1952); Pitsenbarger v. Northern Natural Gas Co., 198 F.Supp. 665 (D.C.S.D.Iowa 1961); Williams v. Northern Natural Gas Company, 136 F. Supp. 514, (D.C.N.D.Iowa 1955) App. Dis., 8 Cir., 235 F.2d 782; Laden v. Atkeson, 112 Mont. 302, 116 P.2d 881 (1941); Holm v. Davis, 41 Utah 200, 125 P. 403, 44 L.R.A.,N.S., 89 (1912); 17A Am.Jur. Easements § 129 pp. 737–739; 5 Restatement, Property, § 484 (1944) p. 3020; cf. Stalcup v. Cameron Ditch Company, 130 Mont. 294, 300 P.2d 511 (1956).

The last line of inquiry at the last hearing, which was not discussed in counsels' statements, presents a final problem that at least must be noted. In response to a question by the court, a witness for the Government testified that the canal in his judgment would have to be cleaned about every ten years. Assuming that construction is not now complete, then, it may be more than ten years before there will be any occasion to use the boom. While I have found with some assurance that the use of that boom would be reasonably necessary to clean the canal if it had to be cleaned under existing conditions, what the situation will be ten or fifteen years hence in view of the prospective changes in equipment and procedures as suggested by the evidence is somewhat uncertain.

The Government insists that it need not pay for any additional right to operate the boom. If it thus relies exclusively upon the existing easement, rather than condemnation, it is under continuing obligation to avoid unnecessary injury to the servient estate. Brown & Root, Inc. v. United States, 116 F.Supp. 732, 126 Ct.Cl. 684 (1953); Laden v. Atkison, 112 Mont. 302, 116 P.2d 881

(1941); Holm v. Davis, 41 Utah 200, 125 P. 403, 44 L.R.A.,N.S., 89 (1912); 17A Am.Jur. Easements § 130 p. 739. And it is entirely possible that the use of the boom ten or fifteen years hence will needlessly inflict injury upon the Power Company.

Should I accede to the Government's insistence that I recognize its claimed rights without making an award on the theory that an additional easement to operate the boom is sought, it necessarily would be, it seems, the confirmation of the right to operate the boom under existing conditions, not precluding a later claim under changed conditions that its operation then would be the subjugation of the servient estate to unnecessary injury and thus an enlargement of the existing easement. On the other hand, the dilemma of the Power Company too is perplexing for it must determine the height of its lines in the near future to permit early installation; and if it does not adjust its construction program to the possibility that the operation of the boom in the future will continue a reasonably necessary exercise of the existing easement of the Government, it will be proceeding at its peril.

Having already permitted the parties to reopen once, I fear that there still is insufficient evidence, or even specific issues reflected in the pleadings or pretrial order before me, to make possible a solution of this refined dilemma. It may be that by their respective positions, and the implied issues acquiesced in, the parties may be confronted unavoidably with the problem as a part of the practical context of the case. Perhaps it is one of those inbuilt possibilities that should be disregarded by me as the parties have chosen to disregard it in their prior submissions. And perhaps it commends, as I endeavored to suggest in exploring the possibilities of some practical adjustment at the last hearing, further thoughts and efforts toward a practical solution between the parties.

The foregoing opinion, together with the recitation of uncontroverted facts set out in the pre-trial order submitted by the parties, is deemed sufficient as findings of fact and conclusions of law. In view of the situation last mentioned, however, it is directed that a form of proposed decree not inconsistent with this opinion be prepared by counsel for the Government, and, if the form is not agreed to by the parties, settled upon at least five days notice on one of my regular rule days.